UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Judith L. Pearson,

Civ. File No. 00-779 (PAM/JGL)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

Independent School District No. 2142;
St. Louis County Board of Education;
Chester Larson, Larry Salmela, and
Larry Anderson, as members of the
St. Louis County Board of Education; and
Donald Langan, Superintendent of Schools
for Independent School District No. 2142,

Defendants.

---

This matter is before the Court on Defendants' Motion for Summary Judgment. For the reasons that follow, the Court grants the Motion.

**BACKGROUND**

Plaintiff Judith L. Pearson ("Pearson") is the principal at the Tower-Soudan K-12 school in Independent School District 2142 ("ISD 2142"), which is located in St. Louis County, Minnesota. In May and June of 1997, Pearson twice applied for the position of Superintendent of ISD 2142. She was not selected for the position during either round of hiring, although she was one of four finalists the second time the position was posted. During this time, the Assistant Superintendent quit, and that position was filled without a job posting. When the outgoing Superintendent retired, the new Assistant Superintendent was

FILED AUG 22 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD AUG 22 2001
DEPUTY CLERK ________

appointed as Interim Superintendent, again without any job posting for that position. Pearson alleges that, in failing to hire her as the Superintendent and failing to allow her to apply for the Assistant Superintendent and Interim Superintendent positions, Defendant St. Louis County Board of Education (the "School Board") discriminated against her on the basis of sex. She filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging such discrimination in March 1998. Pearson further alleges that, as a result of the charge, she was retaliated against through a negative performance evaluation and being transferred to Tower-Soudan. She filed another EEOC charge alleging this retaliation in October 1999. She received right-to-sue letters from the EEOC on her two charges, and filed this lawsuit on March 28, 2000.

In her fourteen-count Complaint, Pearson claims that Defendants violated her due process and equal protection rights under both the U.S. and Minnesota Constitutions; conspired to deprive her of the same; discriminated against her and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the Minnesota Human Rights Act, Minn. Stat. § 363 et seq. ("MHRA"); interfered with her "attempts to avail herself to the benefits of a federally financed public educational institution" in violation of Title IX, 20 U.S.C. § 1681 et seq. (Compl. ¶ 42); violated the Minnesota Open Meeting Law, Minn. Stat. § 471.705;[1] and that Defendants' actions amounted to intentional infliction of emotional distress. She also claims that the School

[1] The Open Meeting Law has been recodified at Minn. Stat. § 13D.01 et seq.

Board is liable under Minn. Stat. § 466.01 et seq. for the acts of its employees pursuant to the doctrine of respondeat superior. She seeks injunctive relief requiring ISD 2142 to "cease and desist from all conduct, now and in the future, that is based on the sex of an individual and that has the purpose or effect of unreasonably interfering with an individual's full participation in or pursuit of educational, employment, or other opportunities" in ISD 2142. (Compl. ¶ 61.) She also seeks compensatory damages of more than $1 million and punitive damages of more than $1 million.

**DISCUSSION**

**A. Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Enter. Bank, 92 F.3d at

747. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). In employment discrimination cases, the Eighth Circuit has cautioned that summary judgment should be granted sparingly. Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994).

**B. Official Capacity**

Defendants point out that, although the Complaint names several individual Defendants (the new Superintendent and three members of the School Board), the caption indicates that these Defendants are sued in their official capacities only, and the Complaint itself nowhere states otherwise. Pearson's brief on this point is confusing. At one point, Pearson states that "the individuals named are being sued in an individual capacity." (Pl.'s Opp'n Mem. at 23.) She goes on to explain that, therefore, "the Defendants named in their official capacities should [not] be dismissed." (Id.)

It is well settled that a Complaint must explicitly state that a public official is sued in his individual, as opposed to official, capacity. Johnson v. Outboard Marine Co., 172 F.3d 531, 535 (8th Cir. 1999). Absent such indication, the Court must assume that the individual Defendants are sued in their official capacities only. Id. Therefore, because the Complaint states only that Defendants are sued in their official capacities, and Pearson has offered no reason to disregard the language of the Complaint, the Court will assume that she intended

to sue the individual Defendants only in their official capacities.

**C. Constitutional Allegations**

Plaintiff alleges that Defendants, acting under color of state law, deprived her of the equal protection of the laws and due process of law in violation of 42 U.S.C. § 1983. She claims that the same conduct violated the analogous provisions of the Minnesota Constitution, and that Defendants conspired under 42 U.S.C. § 1985 to deprive her of her federal constitutional rights. The Equal Protection and Due Process Clauses of the U.S. and Minnesota Constitutions are essentially coextensive, and thus the following discussion applies to all of Pearson's constitutional claims. Schumann v. Comm'r of Taxation, 253 N.W.2d 130, 132 (Minn. 1977) (Equal Protection Clause); Kirt v. Humphrey, No. C1-96-2614, 1997 WL 561249, *6 (Minn. Ct. App. Sept. 9, 1997) (Due Process Clause).

1. Equal Protection

The Equal Protection Clause is violated by the disparate treatment of a suspect class from those similarly situated resulting in the deprivation of a fundamental right. Fundamental rights, for the purposes of the Clause, include all First Amendment rights, voting, interstate travel, and privacy. See Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 312 n.3 (1976). According to Pearson, her equal protection rights were violated because Defendants denied her equal treatment and equal access, on the basis of her sex, to an employment opportunity with a public educational institution. (Compl. ¶ 32.)

Pearson has offered no caselaw to support her assertion that equal access to

employment opportunities with a public educational institution is a fundamental right protected by the Equal Protection Clause. If Pearson's contention were true, there would be no need for Title VII, because employment discrimination lawsuits could be brought under the equal protection rubric. Pearson has not established a violation of the Equal Protection Clause, and Defendants are entitled to summary judgment on her equal protection claims.

2. Due Process

The Due Process Clause protects citizens from deprivations of life, liberty, or property without due process of law. Pearson claims both a procedural and substantive violation of the Clause, and claims that her protected property interest is "an opportunity . . . to avail herself to and benefit from an employment opportunity with a public educational institution."

Once again, Pearson offers no authority for characterizing the opportunity to apply for a job as a property interest protected by the Due Process Clause. An applicant for employment has no property interest in that employment. See Anderson v. City of Philadelphia, 845 F.2d 1216, 1220 (3rd Cir. 1988); Lounsbury v. United States Postal Serv., No. 4-87-283, 1988 WL 84812, *3 (D. Minn. Aug 12, 1988) (Rosenbaum, J.). Pearson contends that the property right involved is not the employment itself but rather the right to apply for employment. (Pl.'s Opp'n Mem. at 25.) She cites no authority for the proposition that even if such a right exists, it rises to the level of a property interest protected by the Due Process Clause. Pearson has not established an essential element of her due process claims, namely that she was deprived of a protectable property interest.

Moreover, even if she had a property interest in the expectation of employment, Pearson's substantive due process claim fails because she has not shown that the School Board's conduct was egregious. See Myers v. Scott County, 868 F.2d 1017, 1019 (8th Cir. 1989) (noting that "the theory of substantive due process is properly reserved for truly egregious and extraordinary cases . . . "). Plaintiff has failed to show a violation of her procedural or substantive due process rights.

3. Section 1985

Pearson claims that Defendants engaged in a conspiracy to violate her constitutional rights in violation of 42 U.S.C. § 1985. Because she has failed to establish that her constitutional rights were violated, her conspiracy claim also fails.

## B. Title VII and the MHRA

1. Discrimination

Pearson's employment discrimination claims, whether under Title VII or the MHRA, are analyzed using the same framework. See Jackson v. Missouri Pac. R.R. Co., 803 F.2d 401, 406-07 (8th Cir. 1986) (Title VII); Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 444 (Minn. 1983) (MHRA). Under the familiar burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, a plaintiff in a discrimination claim bears the burden of establishing a prima facie case of discrimination. 411 U.S. 792, 802 (1973). Specifically, in this case Pearson must establish that: (1) she is a member of a protected group; (2) she applied for a position for which she was qualified; (3) she was not hired for that position;

and (4) after she was rejected the employer continued to seek applicants with Pearson's qualifications. Krenik, 47 F.3d at 957.

If Pearson establishes a prima facie case of discrimination, Defendants must rebut that showing by presenting evidence of a legitimate, non-discriminatory reason for failing to hire Pearson. Coffman v. Tracker Marine, 141 F.3d 1241, 1245 (8th Cir. 1998). If Defendants can make this showing, Pearson must then prove that the reasons offered by Defendants were pretextual and that illegal discrimination was a "motivating reason" for Defendants' actions. Id.

Pearson's allegations of employment discrimination arise out of four separate occasions in which the School Board failed to hire her or failed to allow her to apply for a position. In May 1997, the School Board began interviewing candidates for Superintendent to replace the outgoing Superintendent, Dan Mobilia, who was retiring. Pearson was not named a finalist at that time, and the job was offered to Dr. Donald Langan. Several weeks later, on June 10, 1997, Dr. Langan declined the offer. In late May 1997, the Assistant Superintendent abruptly quit his job. Because the position was empty, the School Board did not advertise or post this position, and instead named another principal in ISD 2142, Sidney Simonson, to fill the position. Shortly thereafter, when it became clear that Superintendent Mobilia would not delay his retirement, the School Board decided to appoint an Interim Superintendent while the search for a permanent Superintendent proceeded. Once again, this position was not advertised or posted, and the School Board appointed Mr. Simonson to be

Interim Superintendent. Pearson reapplied for the Superintendent position, and she was named one of four finalists for the job. Ultimately the School Board decided not to hire any of the four finalists, and instead sought again to hire Dr. Langan. Dr. Langan accepted the position of Superintendent of ISD 2142 in late October or early November 1997.

a. First Superintendent job posting

Defendants contend that Pearson cannot show that she was qualified for the position of Superintendent at the time that position was first posted, and thus that she has failed to establish a prima facie case with regard to the first posting. According to Defendants, the job posting required a minimum of five years of experience as a superintendent, and there is no dispute that Pearson had only slightly over two years' experience as a superintendent.

Pearson responds that the five-year requirement itself discriminates against women. Although neither party addresses the legal underpinnings for such a proposition, the Supreme Court has stated that employment decisions based on ostensibly objective criteria can have effects that are indistinguishable from intentionally discriminatory practices. Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 987 (1988). Pearson has not, however, offered any evidence to support her contention that the facially objective experience requirement in fact had a disparate impact on women. Pearson's expert witness, Dr. Cliff Hooker, opines that the "ISD 2142 experience requirement discriminates against women because an employment pool described in this fashion is limited primarily to male candidates." (Prebich Aff. Ex. 1 at 1.) He offers no statistical evidence to support his opinion, however. In fact, he offers no

evidence of any kind in support of this opinion. Absent some actual evidence, the Court is unwilling to conclude that a facially objective, and perfectly reasonable, requirement such as number of years of experience, has an illegitimate impact. Pearson has failed to show that she was qualified for the Superintendent position as it was first advertised, and therefore has not established her prima facie case as to the first Superintendent hiring process.

b. Assistant Superintendent and Interim Superintendent

Defendants do not dispute that Pearson has met her burden to show a prima facie case with respect to the hiring of the Assistant Superintendent and Interim Superintendent. Rather, Defendants argue that the School Board had a legitimate reason for not posting or accepting applications for these positions. According to Defendants, the School Board had to act quickly to fill both positions, because the Assistant Superintendent position was vacant, and because ISD 2142 would have been without a Superintendent at the end of June. Defendants have met their burden to show a legitimate reason for the allegedly discriminatory actions.

The burden then shifts to Pearson to prove that Defendants' legitimate reason was in fact a pretext for discrimination. Pearson claims that no exigent circumstances existed justifying the hurried hiring for Assistant and Interim Superintendent, and that in fact the School Board did not post either position in order to preclude her from applying. Pearson's arguments in this regard are difficult to follow, but she appears to believe that Dr. Langan selected Mr. Simonson to be his Assistant Superintendent, and that Board member Chet

Larson pushed through the hiring of Mr. Simonson. According to Pearson, Larson's involvement was significant because, in 1990, Pearson sued Larson and ISD 2142 for sex discrimination and won. She claims that Larson continues to harbor a grudge against her for this lawsuit. She also contends that the School Board's failure to hold open meetings and to tape the proceedings of the closed meetings at which the two positions were filled, in violation of the Open Meeting Law, was an attempt to cover up the discriminatory actions it took.

Pearson offers no evidence to show that her conclusions about the actual reasons for the School Board's actions are correct. Instead, she asks the Court to draw tenuous inferences from conduct that was unusual at best, and in light of the circumstances, appears reasonable and necessary. Pearson may not rely on mere allegations and suppositions in opposing the Motion for Summary Judgment, but must come forward with evidence creating a genuine issue of material fact. Krenik, 47 F.3d at 957. Even taking all of Pearson's evidence in the light most favorable to her, she has not shown that issues of fact exist as to whether the School Board's actions were a pretext for discrimination. Her claims of discrimination with respect to the failure to post the Assistant and Interim Superintendent positions fail.

c. Second Superintendent job posting

Pearson was selected as a finalist for the Superintendent position during the second posting period. Thus, she has met her burden to establish her prima facie case. Once again,

however, Pearson claims that Defendants' legitimate explanation for the School Board's failure to hire her is a pretext for illegal discrimination.

According to Defendants, the School Board could not reach a consensus on any of the four finalists for the Superintendent position. Because the Board still considered Dr. Langan a candidate for the position, he was contacted to determine whether he was interested in the position. After Dr. Langan confirmed his interest, the Board then decided to offer him the position. Defendants maintain that Dr. Langan was the most qualified person for the job, and point out that Pearson does not have the educational credentials that Dr. Langan has, nor does she have the administrative experience Dr. Langan has.

Pearson's evidence of pretext with respect to the second Superintendent hiring is even more tenuous than her evidence with respect to the Assistant Superintendent and Interim Superintendent positions. Most of her discussion on this point is related to Assistant Superintendent Simonson, who was also a finalist during the second posting period. At some point during the hiring process, the School Board was informed that Simonson's state licensure had been suspended, and as a result, he was removed from consideration for the Superintendent position. It is not clear why Pearson believes that the facts surrounding the School Board's investigation of Simonson's credentials are relevant to her claims of discrimination.

Pearson also attempts to ascribe nefarious intent to the School Board's consideration of Dr. Langan, because he had not officially reapplied for the second posting of the

Superintendent position. According to Pearson, this deviation from standard procedures is evidence that the School Board was acting from an illegitimate motive.

In failure-to-hire cases, the Court must not "weigh the wisdom of any particular employment decision." Ruby v. Springfield R-12 Pub. Sch. Dist., 76 F.3d 909, 912 n.7 (8th Cir. 1996). Moreover, although an employer's failure to follow its own procedures may support an inference of pretext, Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1024 & n.6 (8th Cir. 1998), such an inference is not supported in this case, where the alleged deviation from standard procedures affected all candidates for the second Superintendent posting, not merely Pearson. Floyd v. State of Missouri Dep't of Social Servs., 188 F.3d 932, 937 (8th Cir. 1999). Pearson has not offered sufficient evidence to meet her burden to rebut Defendants' legitimate explanation for the School Board's decision not to hire her. Thus, Defendants are entitled to summary judgment on Pearson's claims of discrimination arising out of the second Superintendent hiring process.

2. Retaliation/Reprisal

Title VII makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this title [42 U.S.C.A. §§ 2000e-2000e-17], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title [42 U.S.C.A. §§ 2000e-2000e-17]." 42 U.S.C.A. § 2000e-3. Similarly, Minn. Stat. § 363.03, subd. 7, prohibits reprisals against employees for opposing an unlawful employment practice

or filing a charge of discrimination. To establish a prima facie case of retaliation under either Title VII or the MHRA, a plaintiff must demonstrate that she engaged in a statutorily protected activity, that she suffered an adverse employment action, and that there was a causal connection between the adverse employment action and the protected activity. Stevens v. St. Louis Univ. Med. Ctr., 97 F.3d 268, 270 (8th Cir. 1996); Coffman, 141 F.3d at 1245. If Pearson can establish a prima facie case, the Court should apply the same burden-shifting analysis from McDonnell Douglas discussed above with reference to her discrimination claims. See Smith v. Riceland Foods, Inc., 151 F.3d 813, 818 (8th Cir. 1998); Hubbard, 330 N.W.2d at 444.

Pearson claims that she was retaliated against for filing a charge of discrimination with the EEOC in March 1998.[2] In January 1999, she received what she characterizes as a negative performance evaluation, and in August 1999, she was transferred to Tower-Soudan.[3] Defendants contend that neither of these allegedly negative actions constitute adverse employment actions, and thus that Pearson's retaliation claims fail as a matter of law.

---

[2] Pearson also implies that she was retaliated against for prevailing in a discrimination lawsuit against ISD 2142 in 1991. However, this claim is not included in her Complaint, and thus will not be considered when evaluating the merits of her retaliation claims. In any event, Pearson's earlier lawsuit is too remote in time from the allegedly retaliatory actions she complains of to have any connection to those actions.

[3] Pearson also alleges that she was retaliated against in salary negotiations in 1999. Not only is this allegation quite difficult to understand, given Pearson's circuitous and conclusory explanations in her brief, but she has not alleged that, in the end, the salary negotiations led to her receiving any sort of cut in pay. Thus, she has not shown an adverse employment action with respect to those negotiations.

Although Pearson was not demoted or terminated, employer action need not rise to that level to be considered adverse. See Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir. 1997). At the same time, however, mere inconvenience or unhappiness on the part of the employee will not lead to a finding of actionable adverse employment action. See id.; Enowmbitang v. Seagate Tech., Inc., 148 F.3d 970, 973 (8th Cir. 1998). Rather, "[a]dverse employment action is that which materially alters the terms or conditions of the plaintiff's employment." Enowmbitang, 148 F.3d at 973. Such actions include "ultimate employment decisions," such as hiring, granting leave, discharging, promoting, and compensating. Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997); see also Dollis v. Rubin, 77 F.3d 777, 782 (5th Cir. 1995). Based on this standard, the Court concludes that Pearson did not suffer an adverse employment action.

Pearson has offered no evidence to show that the allegedly negative performance evaluation she received in January 1999 resulted in any kind of job detriment. She was not censured or disciplined, she was not suspended, and she was not demoted. In fact, there appears to have been no adverse effect from that evaluation. Similarly, Pearson has failed to show that her transfer to Tower-Soudan was an adverse employment action. She did not experience a cut in pay or benefits and she had the same job title she had previously. According to Pearson, she incurred financial loss as a result of the transfer, because her commute was longer. Such a financial loss is not, however, an adverse employment action prohibited by Title VII or the MHRA. Montandon, 116 F.3d at 360. Pearson has failed to

establish a prima facie case on her retaliation claims.

3. MHRA aiding and abetting

Pearson has offered no evidence to support her allegations of aiding and abetting in violation of the MHRA. See Minn. Stat. § 363.03, subd. 6. She has not specified who aided and abetted whom, nor has she specified what unlawful practices were allegedly aided and abetted. Neither the Complaint nor her brief in this matter offer any indication of the nature of her allegations. Defendants are entitled to notice of the charges against them. Fed. R. Civ. P. 8(a). Pearson has utterly failed to provide that here, and this claim will be dismissed.

**C. Title IX**

Title IX prohibits discrimination on the basis of sex in educational programs that receive federal funding. 20 U.S.C. § 1681 et seq. According to Pearson, Defendants discriminated against her and "denied and interfered with her attempts to participate in and avail herself to the benefits of a federally financed public educational institution" in violation of Title IX. (Compl. ¶ 42.) These allegations are essentially restatements of her employment discrimination claims under Title VII and the MHRA.

There is a split of authority as to whether Congress intended Title IX to imply a private right of action for employees of publicly funded educational institutions. See Bedard v. Roger Williams Univ., 989 F. Supp. 94, 97 (D.R.I. 1997) (collecting cases). A Court in this District, however, has held that Congress did not intend such a cause of action. Cooper v. Gustavus Adolphus College, 957 F. Supp. 191 (D. Minn. 1997) (Tunheim, J.). The Eighth

Circuit has not addressed the issue.

Cooper noted that the remedy for violations of Title IX is denial of federal funding. Id. at 192. Pearson does not seek such a remedy here, but seeks damages, which are not generally available under Title IX. Moreover, Cooper found that, because Title VII provides a comprehensive remedy to victims of employment discrimination and Title IX does not clearly imply a private remedy for such discrimination, none should be created by the courts. Cooper, 957 F. Supp. at 193. This Court agrees.

Pearson argues that the reasoning of Cooper does not apply to her allegations because Cooper involved a private college, and she is suing a public educational institution. While it may be true that Gustavus Adolphus is a private college, it is also true that private colleges often receive federal funds and may be subject to Title IX. Indeed, in Cooper, the college did not challenge the plaintiff's assertion that it was subject to Title IX. Thus, Cooper may not be limited as Pearson suggests, and applies squarely to her allegations. Title IX provides no cause of action to her, and this claim must be dismissed.

**D. Open Meeting Law**

Count XII of the Complaint alleges that Defendants "transacted public business at a closed meeting of which no notice was provided nor any journal or other record kept" in violation of the Minnesota Open Meeting Law, Minn. Stat. § 13D.01 et seq. (Compl. ¶ 53.) She seeks injunctive relief and damages for the alleged violations of the Open Meeting Law. (Id. ¶ 54.)

Defendants contend that Pearson has not stated a claim under the Open Meeting Law because she is not seeking the only remedy available under the statute, namely a $300 civil penalty from each School Board member. Minn. Stat. § 13D.06, subd. 1. Pearson admits that she is not seeking the civil penalty provided by the statute. (See Pl.'s Opp'n Mem. at 31 ("Plaintiff is not seeking a civil penalty from individuals.").) However, she claims that her requests for attorney's fees and costs, and the injunction she seeks, amount to remedies available under the statute, and that her claim should not be dismissed.

Damages are not available for violations of the Open Meeting Law. Grossman v. Sch. Bd. of I.S.D. No. 640, 389 N.W.2d 532, 536 (Minn. Ct. App. 1986). Pearson's requests for attorney's fees and costs cannot be construed as seeking a remedy under the statute for the purposes of determining whether she has stated a proper claim for relief. Injunctive relief, however, may be available to remedy violations of the statute. Channel 10, Inc. v. Indep. Sch. Dist. No. 709, 215 N.W.2d 814, 823 (Minn. 1974). However, the injunctive relief Pearson seeks is not directed toward any violation of the Open Meeting Law, but is only directed at the alleged employment discrimination and retaliation. (Comp. ¶ 61.) The statute is clear as to the penalties available, and Pearson has requested none of them. This claim must be dismissed.

**E. Intentional Infliction of Emotional Distress**

Pearson's intentional infliction of emotional distress claim also fails. In order to prevail on such a claim, the plaintiff must establish that: 1) the defendant's conduct was

extreme and outrageous; 2) the conduct was intentional or reckless; and 3) it caused severe emotional distress. See Hubbard, 330 N.W.2d at 438-439. "The operation of this tort is sharply limited to cases involving particularly egregious facts." Id. at 439. Pearson has not presented such facts here.

In order to be deemed "extreme and outrageous," conduct "must be 'so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community.'" Id. (quoting Haagenson v. Nat'l Farmers Union Property & Cas. Co., 277 N.W.2d 648, 652 n.3 (Minn. 1979)). Even assuming that all Pearson alleges is true, Defendants' actions fall far below this deliberately high standard.

Pearson does not explain how Defendants' conduct in this case was in any way extreme and outrageous. That failure in itself justifies granting summary judgment to Defendants on this count. However, even assuming that Defendants' conduct was somehow extreme or outrageous, Pearson has not established that the distress she suffered was severe. Pearson contends that she has put forward evidence of her emotional distress, and that a jury should decide whether she should recover for intentional infliction of that distress. (Pl.'s Opp'n Mem. at 34.) As evidence for this distress, Pearson points to her deposition and medical records. In her deposition, Pearson testified that she suffered rage, sleeplessness, headaches, and lightheadedness for two or three weeks in the summer of 1997. (Pearson Dep. at 313-316.) She did not seek counseling or medical treatment for her rage or sleeplessness, although she did visit a doctor after experiencing lightheadedness. (Id. at 316-

317.) The doctor prescribed codeine for her headaches, and she did not return for follow-up treatment. (Id.) She also claims to have been prescribed medication for her insomnia during this period. (Id. at 318-19.)

As a matter of law, Pearson's allegations do not rise to the level of severe emotional distress necessary to sustain a claim for intentional infliction of emotional distress. It can hardly be said that she suffers from distress "so severe that [she cannot] be expected to endure it." Hubbard, 330 N.W.2d at 439. Pearson has not established the elements necessary to maintain a claim of intentional infliction of emotional distress.

**F. Respondeat Superior**

Pearson's final claim is that the School Board is liable for the intentional and negligent acts of its officers, employees, and agents pursuant to Minn. Stat. § 466.01 et seq. (Compl. ¶ 57.) The Complaint does not specify for which torts the School Board is allegedly liable, but Pearson's brief states that she "has asserted a claim under Respondeat Superior for . . . all of the causes of action" in the Complaint. (Pl.'s Opp'n Mem. at 35.) Pearson does not explain how this cause of action differs from her allegations against the individual Defendants in their official capacities, which necessarily means that the School Board is liable for their actions. Neither party addresses Minn. Stat. § 466.12, which provides that school districts are not liable under § 466.02 unless the district is able to procure insurance for such liability.

Whether ISD 2142 has the required insurance, however, is of no moment. The Court

has determined that all of Pearson's tort claims fail as a matter of law. Thus, there are no torts for which the School Board could be liable under the theory of respondeat superior. This claim fails.

**CONCLUSION**

As this Court concluded under similar circumstances:

> Once again, the Court comes to the end of its discussion drained of energy and patience. There is no need to summarize the numerous dismissals outlined above. Instead, in an effort to stem a disturbing trend in employment litigation, the Court feels compelled to express again its dissatisfaction with the presentation of this lawsuit. A "shotgun" approach to litigation cannot and will not be tolerated by this Court. Loading lawsuits with theory upon theory, and claim upon claim, does not protect the legal rights of an aggrieved individual. Instead, it merely drags out the litigation process and adds to the cost of an already costly undertaking. Most importantly, it unnecessarily impedes, rather than advances, the timely dispensing of justice. Lawyers have a duty of professionalism to their clients and to the courts. Reasonable evaluation of a client's circumstances and careful analysis of the law are inherent components of that duty. For the practitioner, these principles must never be ignored, or forgotten.

Smith v. DataCard Corp., 9 F. Supp. 2d 1067, 1085 (D. Minn. 1998) (Magnuson, J.).

Defendants are entitled to summary judgment on all of Pearson's claims.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Clerk Doc. No. 17) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 22, 2001

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: AUG 22 2001

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*